UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID RUNK
        Plaintiff,                            CIVIL ACTION NO. 09-12893

    v.                                      DISTRICT JUDGE JULIAN ABELE COOK

COMMISSIONER OF                  MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
                                       /

## REPORT AND RECOMMENDATION

This is an action for judicial review of the defendant's decision denying plaintiff's 2006 application for Title II social security disability benefits. The issue before the court is whether plaintiff was disabled on or before December 31, 2005. Plaintiff alleged disability based on degenerative disc disease, lumbar spine impairment, hypertension, acid reflux disease, and arthritis in the right hip. The ALJ found that plaintiff had severe impairments of osteoarthritis, degenerative disc and joint disease, hypertension, and acid reflux but not depression. (Tr. 14-15) Although unable to perform his past relevant work, he was able to perform a range of unskilled, low stress light work with some postural restrictions.[1] (Tr. 15) Relying on the Grids and the testimony of a vocational expert, the ALJ found that he was not disabled and not entitled to benefits. Plaintiff contends that this finding is not supported by substantial evidence, and he raises specific issues: (1) that the ALJ

---

[1] The ALJ also found that plaintiff was 5 ft. 7 in and weighted 250 pounds. This Body Mass Index (BMI) of 39.2 contributes to his reduced exertional capacity. (Tr. 16)

failed to properly evaluate the medical opinion evidence of plaintiff's treating physician; (2) that the ALJ incorrectly evaluated plaintiff's mental impairment; and (3) that the ALJ erred in evaluating plaintiff's credibility. Defendant contends otherwise. For the reasons discussed in this report, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

At the time of the ALJ's decision, plaintiff was 52 years old. He alleged disability beginning October 2005; he was insured for social security disability only through December 31, 2005. He is a high school graduate with one year of college and worked as an optician from 1993 through October 30, 2005. (Tr. 14, 87, 92-97) He stopped working due to severe hip and back pain, and pain and limitations in bending his hands. (Tr. 28-33)

**Standard of Review**

The Commissioner's final decision is subject to judicial review under 42 U.S.C. § 405(g), which provides, *inter alia:* "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). A court " 'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.' " *Colvin v. Barnhart,* 475 F.3d 727, 729-30 (6th Cir.2007) (quoting *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997)). If the Commissioner's decision is supported by substantial evidence, the court must

defer to that decision "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004) (quoting *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir.2003)).

Disability is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). An individual will only be determined to b under a disability if his impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id.* § 1382c(a)(3)(B).

The ALJ, in determining whether a claimant is disabled, conducts a five-step analysis:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work,

if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Commissioner*, 127 F.3d 525, 529 (citing 20 C.F.R. § 404.1520).

Under the five-step inquiry, the claimant bears the burden of proof through the first four steps, and the Commissioner bears the burden of proof at the final step. *Jones v. Comm 'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003). To prevail at step five, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity," *id.,* taking into account factors such as age, education, and skills. *Walters,* 127 F.3d at 529.

The issue before the court is whether to affirm the Commissioner's determination. In *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

*Brainard,* 889 F.2d at 681.

**Background**

At the hearing, plaintiff testified that he has problems with his hands and has had shots in them and some past difficulties with his fingers. (Tr. 27-30) He became unable to use the small tools necessary in his job as an optician. Id. He has arthritis in his hands, wrists, and is status post hip surgery. Plaintiff has pain down his back and right leg and thing. He lives in a house with his wife, who is working. He fell before his hip surgery and he still falls down. (Tr. 31-32) His balance is bad and his leg goes numb. Id. Plaintiff's other hip is also getting bad and sometimes he uses a cane, which is prescribed. (Tr. 33)

Richard Szydlowski testified as a vocational expert. Plaintiff's past work as an optician is skilled light work. The VE opined that if plaintiff were able to do medium work with restrictions and low stress, one or two step jobs, then he could no do any of his past work. If he could do medium unskilled work, self-paced, no production pace, then he could do janitorial work(5000) and assembly type jobs (6000). (Tr. 34-35) If he were limited to light work, then he would be able to perform unskilled light jobs including security services (2000), cleaning offices (11,000), and inspector/checker (1000). (Tr. 36) There would be transferable skills to some jobs such as precision grinding and polishing at the sedentary level (1000 jobs). Id. If plaintiff's pain were fully credited including his psychological problems and conditions over the past year that prevent him from any reliability factor, then he could not work. (Tr. 37)

Upon questioning by plaintiff's attorney, the vocational expert testified that if Plaintiff were limited to occasional use of the hand for both gross and fine manipulation, then all of the semi-skilled jobs with transferable skills would be eliminated. They require frequent to continuous use

of the hands. If a person were absent more than two to three times per month, there would be no jobs. (Tr. 38)

**The ALJ's Opinion**

In this case, the ALJ determined that claimant carried his burden of proof through the first four steps, and demonstrated that he was unable to perform any of his past relevant work. 20 C.F.R. § 404.1565. This court's inquiry is thus limited to whether substantial evidence supports the ALJ's determination at step five of the inquiry--namely, whether substantial evidence supports the ALJ's determination that plaintiff is able to perform a significant number of jobs that met the requirements for unskilled light work that did not require climbing ladders or scaffolding, no more than occasional climbing ramps and stairs, occasional stooping crouching and crawling, low work stress, limited ability to maintain attention and concentration, and one or two step instruction.

The ALJ found that Plaintiff's mental health symptoms were not severe prior to the expiration of his insured status in December 2005. Plaintiff was only insured for disability benefits for about 60 days after his alleged onset date. The mental health records documenting his depression were from 2007 and 2008, a substantial period of time after his insured status expired. It should be noted that in this application plaintiff is not seeking supplemental security income (SSI) for disability after his insured status expired.

**The Medical Evidence**

Much of the medical evidence comes after the date that plaintiff's insured status expired. In the brief, plaintiff represents that the medical records prior to December 31, 2005 come from Dr. Robert Pierce, Mercy General Health, Dr. Mark Moulton, and Dr. Bennett Willard.

In 2002, medical records show that he was seen at the Third Avenue Family Clinic in Fruitport, Michigan for pain. (These appear to the records from Dr. Pierce) There was notation of a history of anxiety and depression. His major complaint was back and right leg pain. (Tr. 267) On examination in May, 2002, he could get off and on the examination table, was losing wright, and had less pain in his back. He was prescribed Neurontin and a Duragesic patch. (Tr. 269) Plaintiff continued to treat there through January, 2005. (Tr. 279)

Plaintiff had MRI's in 2003. In January 2003, he reported back pain and leg pain. The MRI showed degenerative disc disease at L5-S1, but there was no appreciable change from the study of August 7, 2001. (Tr. 254, 253) The lateral disk bulge seen at that time is not currently evident. (Tr. 245-7, 50) there was narrowing of the intervertebral cervical disks. (Tr. 247-9) In 2003, plaintiff was seen for knee pain. X-rays exam was unremarkable. There was minimal swelling of the right knee. (Tr. 257)

In 2004, plaintiff was treated by Bennett Willard, DO for right hip pain. He was given an injection and advised to follow up in four weeks. (Tr. 261) He received injections in about August but did not have significant relief. (Tr. 262-266) In July 2004, Dr. Willard noted that plaintiff had been on Neurontin and other narcotic medication for some time and was likely physically dependent on the Duragesic patch. (Tr. 266)

With respect to the 2005 medical evidence, records show that plaintiff was seen in April 2005 (apparently by Dr. Pierce) for problems with his fourth digit of his left hand where he has a mallet finger. He was placed into an immobilizing splint. (Tr. 116) In addition, the right leg caused him discomfort in the anterior thigh, buttocks, and down to the knee. There was suspicion of arthritic

changes in the lower lumbar region. Quadriceps exercises were recommended. Id. There was also discussion of his back problems, review of IDD therapy and his MRI from January 2003. He was also seen at the end of June, and efforts were made September and October to get him treatment for persistent back pain. The diagnosis was degenerative disc disease and nerve root compression on the right at L4-5. (Tr. 117) In November, 2005, plaintiff was seen for a three month follow up. He was still experiencing a lot of discomfort across the back into his right leg. He was taking Neurontin, Duragesic, Norco, and Prilosec as well as Lisinopril. Surgery was discussed but plaintiff was going to try physical therapy first. (Tr. 118) Plaintiff was referred in December 2005 to the Hackley Sport Clinic for Physical Therapy. He was diagnosed with right lumbar L5-S1 facet syndrom, incomplete disc rupture, right sciatica. Plaintiff was to call the Sport Clinic and make his own appointments due to his travel schedule. (Tr. 117)

*Medical Records After Expiration of Insured Status*

In January, 2006, plaintiff reports to his doctor that he was moving to Port Huron; he had not yet started any physical therapy. He complained of continuing discomfort in the right thigh and buttocks. (Tr. 118) In April, 2006, plaintiff's MRI of the hips showed degenerative changes, worse on the right; left with classic appearance of osteoarthritis and right with some loss of joint space related to arthritis. (Tr. 119)

Office notes show that he was seen monthly by Dr. Borgiel, M.D. and Dr. Mark Joy beginning in April, 2006. The diagnosis was chronic back pain and in the left groin. (Tr. 121) In May, 2006, he did not need a cane but he also had depression. (Tr. 122) In June, he had a cane and

a diagnosis of degenerative joint disease of the hips. (Tr. 123) He was on Percocet for a brief period and then it was discontinued. (Tr. 126)

In a letter to plaintiff's attorney dated December 28, 2006, Dr. Borgiel reports that plaintiff had been treated by Dr. Joy. He was referred at this first visit to Dr. Lukas, a local orthopedist. (Tr. 129) Plaintiff was prescribed a cane, Celebrex, and Duragesic patches as well as Paroxetine. After one month, his depression was much better and physical therapy was recommended. Id. When Dr. Joy left the practice in November, Dr. Borgiel took over plaintiff's care. When seen then, plaintiff continued to have numbness in this right lateral thigh, a slow gait, and some tenderness around the L4/L5 paraspinals with no significant spasm. Id. Flexion and extension were normal. Extremities were normal and symmetrical bilaterally as was his reflexes. With the exception of obesity, the rest of the examination was normal. Current medications were continued with a goal of weaning him off all his narcotic medication. Plaintiff was taking Duragesic, Norco, Omeprazole, Lisinopril, Neurontin, Flexeril. They were having a moderate effect. Dr. Borgiel did not opine on plaintiff's ability to work due to his short time as his patient. (Tr. 130) Plaintiff continued to be seen regularly by Dr. Borgiel and continued on the Duragesic patches, Neurontin, Lisinopril, and Prilosec. (Tr. 133)

Plaintiff began treatment for right hip pain and groin pain with Dr. Gerald Jerry MD in August, 2006 on referral from Dr. Joy. (Tr. 137-38) The clinical orthopedic findings included deep pain to the groin with internal rotation and pain upon palpitation to the lateral femoral cutaneous nerve. He had no complaints of pain to the lower back. Length was 3 mm shorter on the right. Id. The plan was for plaintiff to have an EMG and possible surgery. Id. Plaintiff underwent a right hip

resurfacing. Follow up x-rays in September, 2006, were satisfactory and plaintiff was on Coumadin. (Tr. 140) Physical therapy assessment, in October 2006, rated him a good rehabilitation candidate and a plan was developed, and he was treated three times a week for four weeks. (Tr. 142-169)

In January 2007, plaintiff was seen for follow up. The right hip was better but he had back pain with pain radiating to his right thigh and used a cane. (Tr. 169) The diagnosis was status post right hip arthroplasty and lumbar degenerative disc disease. Id. An examination conducted January, 2007 at the Bone and Joint Institute by Dr. Khalil indicates that plaintiff had been referred by Dr. Jerry for evaluation and treatment of joint pain. (Tr. 171) Plaintiff reported pain that started in his 30s, mainly in the low back. His past medical history in addition to the hip arthroplasty includes hypertension, GI problems, and back problems. The impression was inflammatory arthritis. He had a skin rash similar to psoriasis possibly related to ankylosing spondylitis. Dr. Khalil continued his medications and a sample of Skolazin to try. He had injections of Kenalog in his wrists as well. (Tr. 173) Plaintiff had normal EMG studies in January, 2007. (Tr. 195-6) In February 2007, the EMG studies were reported as showing no definitive lateral femoral cutaneous nerve involvement. Neither did they show any peripheral neuropathy or radicular neuropathy. MRI did not show any defined herniated disc. There were degenerative changes at multiple levels but no defined spinal stenosis, herniated or bulging disc. (Tr. 175) Conservative care was recommended. Id. Plaintiff returned in March, 2007 with a chief complaint of rash, itching and burning. He tried to decrease his Duragesic and is starting to have withdrawal symptoms and related complications. (Tr. 176) He was directed to continue to decrease the Duragesic; increase Neurontin and received another injection of Kenalog. (Tr. 176)

Dr. Khalil completed an Arthritis Questionnaire in February, 2007. He first treated plaintiff in January 2007 and diagnosed osteoarthritis of the lumbosacral spine, lumbar radiculopathy, rotator cuff tendinitis, and osteoarthritis of the hands. (Tr. 197) Prognosis was poor. Plaintiff had limited range of motion, joint tenderness in his low back and fingers, and joint swelling. Id. Synovial fluid had not been analyzed. He has possible psoriasis. (Tr. 198) Plaintiff needs a cane, cannot sustain ambulation, initiate ambulation, or complete activity. He has moderate limitations in grasping, using hands and fingers, and reaching overhead. (Tr. 199) Plaintiff has severe to moderate neuropathy in his hands. He can only sit for two hours, cannot stand or walk, and must change positions every thirty to 45 minutes. (Tr. 200) Lifting restrictions were zero to five pounds and occasionally 5 to 10 pounds. (Tr 201) There are side effects from the medications. Id. In addition, he has depression, psychological limitations, and postural limitations, but can tolerate low stress work. (Tr. 202-3) The doctor opined that the earliest date the symptoms appeared was "possibly since 2002–was on narcotic meds since then." (Tr. 203)

Dr. Borgiel completed a Multiple Impairment Questionnaire. (Tr. 206-213) He first treated plaintiff in November, 2006 and last treated him in May, 2007. The diagnosis was chronic pain syndrome, myofascial pain, anxiety/depression, toxic dermatitis and osteoarthritis of the hands. (Tr. 206) The prognosis was guarded. Plaintiff has not responded to high dose narcotics and is in pain. He had a recent Rheumatology consult. Id. According to Dr. Borgiel, plaintiff is limited in his ability to sit to only one hour, sit/walk one hour, must get up and move around every 5 to 10 minutes, limited to occasional lifting of 5 pounds and no frequent lifting or carrying. (Tr. 209) In his opinion, plaintiff has depression and will need to take unscheduled breaks during the day. (Tr.

211) In his opinion, the earliest date that these symptoms appeared are April 18, 2006. (Tr. 212) In June, 2008, Dr. Borgiel completed an identical questionnaire. (Tr. 215-222) He notes that the earliest date that he treated plaintiff was November, 2006. Similar restrictions were noted, and plaintiff was found to be incapable even of low stress as plaintiff had a recent admission to the hospital for depression. (Tr. 220) In August, 2008, Dr. Borgiel writes to plaintiff's attorney that plaintiff continues to have chronic debilitating pain. He has some pain control with medication and antidepressant. He has depression due to obesity, which affects his joint pain and emotional state. (Tr. 223)

In April 2007, Dr. Gerald Jerry completed a Hip Impairment Questionnaire, which indicated that he first treated plaintiff August 3, 2006. Plaintiff is status post total hip replacement and has no limited range of motion, no joint instability or tenderness and some muscle weakness in the right hip. X-rays show the implant is well placed and no loosening is noted. Plaintiff has fatigue with ambulation using the cane. (Tr. 281-2) Plaintiff can lift and carry up to five pounds occasionally. (Tr. 284) Dr. Jerry noted that his office is not prescribing any medications for plaintiff. (Tr. 284) He is incapable of even low stress work. (Tr. 285) The earliest date that these symptoms and limitations applied was September 6, 2006. (Tr. 286)

In December 2007 plaintiff was admitted to Port Huron Hospital by Dr. Syed Makki, MD for psychiatric symptoms and suicidal ideation. (Tr. 289-315, 295) This was his first psychiatric hospitalization. A diagnosis of recurrent depression was made without psychotic features. Plaintiff also had cannabis and opiate abuse, hypertension, chronic back pain, and other physical impairments. (Tr. 289) In early January 2008, he was discharged on Cymbalta and instructed to

follow up with psychiatric outpatient care. He had a psychiatric outpatient assessment and was noted to have a depressed mood and anxious affect. He was determined to have a fair prognosis, and a GAF of 40. (Tr. 320-323) Plaintiff's psychiatric evaluation of September, 2008 by Mohammad Saeed, MD indicates that he is still on the Duragesic, prilosec, Neurontin, Lodine, Norco, Ativan and Lisnopril. (Tr. 325) The diagnosis was major depression, recurrent; rule out bipolar disorder depressed, and cannabis dependence. He has chronic pain, hypertension, and obesity. GAF was 40. (Tr. 326)

 **Plaintiff's Arguments**

**(1) That the ALJ Failed to Properly Evaluate the Medical Opinion Evidence of Plaintiff's Treating Physicians Dr. Khalil, Dr. Jerry, and Physician's Health Network.**

These doctors did not see, examine, or treat plaintiff during the period he was insured. The ALJ specifically considered their opinions as well as the records and opinions of Dr. Pierce, Dr. Willard, and noted that no work related restrictions had been placed on plaintiff at any time during his insured period. There was no opinion evidence from any treating or examining physician placing any functional limitations on plaintiff prior to the date he was last insured. The ALJ held that the opinions of Dr. Borgiel, Jerry, Khalil were not entitled to significant weight because they described symptoms and restrictions that existed after the insured status expired. Of the three, only Dr. Khalil opines that any impairments may have existed prior to December 31, 2005 (in summary, that the condition may possibly have existed in 2002 because plaintiff reported being on narcotic medication then). Dr. Khalil began treating plaintiff in January 2007, more than a year after his insured status expired. His opinion as to plaintiff's condition five years earlier, which was not supported by objective evidence or further explanation, was not given significant weight. (Tr. 17) It is essentially

speculative. As noted by the ALJ, while the opinions of the three doctors and their treatment notes may well support a finding of disability at the time of the decision in 2009, they did not support work related limitations prior to expiration of the insured status in December, 2005.

Plaintiff argues that the ALJ disregarded SSR 83-20. However, the ALJ not required to specifically mention SSR 83-20 and it is not applicable where disability is not found. This circuit discussed application of that ruling in several cases including *McClanahan v. Commissioner of Social Sec.* 193 Fed.Appx. 422, 425, 2006 WL 2431000, 2. (6th Cir. 2006) There, the court stated that Social Security Ruling 83-20 governs the determination of disability onset date. Once a finding of disability is made, the ALJ must determine the onset date of the disability. *See Key v. Callahan,* 109 F.3d 270, 274 (6th Cir.1997). The ruling states, in relevant part:

> Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence. . . . Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e. be decided on medical grounds alone) before onset can be established.... In some cases, it may be possible, based on the medical evidence, to reasonably infer that the onset of a disabling impairment occurred sometime prior to the date of the first recorded medical examination, e.g. the date the claimant stopped working.

SSR 83-20; *McClanahan v. Commissioner of Social Sec.* 193 Fed.Appx. 422, 425, 2006 WL 2431000, 2 (6th Cir. 2006)

The court noted that plaintiff advanced no legal authority for his theory that the ALJ applied the wrong legal standard when he failed to mention SSR 83-20 during the disability determination. Although plaintiff cited to *Blankenship v. Bowen,* 874 F.2d 1116, 1122 n. 9 (6th Cir.1989), the

McClanahan court stated that although Social Security Rulings are binding on all components of the Social Security Administration and represent "precedent final opinions and orders and statements of policy and interpretations" neither *Blankenship* nor the Rulings stand for the proposition that an ALJ must refer with specificity to Social Security Rulings when making disability determinations. The court found that "because the ALJ conducted the analysis required by the Ruling, his failure to mention it by name is not fatal to the decision. *See Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir.1989)." Likewise, there is no duty to re-contact Dr. Khalil since the ALJ had sufficient evidence to make a determination and therefore the ALJ had no duty to seek additional information. See, 20 CFR 404.1512(e).

Further, SSR 83-20 is not applicable to this case, since this policy statement applies only when there has been a finding of disability and it is necessary to determine when the disability began. "Since there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required. The only necessary inquiry is whether the claimant was disabled prior to the expiration of his insured status, and we agree that the ALJ correctly determined he was not." *Key v. Callahan* 109 F.3d 270, 274 ( 6th Cir.,1997)

**(2) That the ALJ Incorrectly Evaluated Plaintiff's Mental Impairment**

A claimant for social security disability benefits may have mental impairments which are so severe that they may render him or her disabled. *Blankenship v. Bowen*, 874 F.2d 1116 (6th Cir. 1989). However, the plaintiff must not only demonstrate a mental impairment but must also show that this mental impairment was so severe as to actually render him disabled. *Gerst v. Secretary of*

*HHS*, 709 F.2d 1075 (6th Cir. 1983). His daily activities may properly be considered in assessing whether his mental impairment results in "a marked restriction of the activities of daily living and constriction of interests." *LeMaster v. Secretary*, 802 F.2d 839, 840 (6th Cir. 1986). Evidence that the claimant washed dishes, cooked, read, shopped, watched television and drove demonstrate only slight restrictions. *Young v. Secretary of HHS*, 925 F.2d 146, 150 (6th Cir. 1990). The most important areas of functional loss include social functioning, concentration, persistence and pace, and deterioration or decompensation at work or in work-like settings. *Hugg v. Secretary of HHS*, 987 F.2d 328 (6th Cir. 1993) In this case, no such demonstration was made by plaintiff. The evidence during the relevant time period (prior to December 31, 2005) is scanty. There are some mentions of anxiety, probably depression in treatment notes but there is no clinical diagnosis or finding of any mental impairment. He worked up until 60 to 90 days before his insured status expired. He stopped working due to back, hand, and leg problems. He never experienced any episodes of decompensation in any work setting. He was never hospitalized for mental health issues until 2008. He never received any inpatient or out patient treatment during his insured period. There is not sufficient evidence in the record to find that the mental impairment was severe prior to December 31, 2005.

**(3) That the ALJ Erred in Evaluating Plaintiff's Credibility**

As a general proposition in social security cases, courts find that pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. *Houston v. Secretary of HHS*, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. *Houston,* 736 F.2d at 367; *Walters v.*

*Commissioner of Social Security,* 127 F.3d 525, 531 (6th Cir. 1997); *Villarreal v. Secretary of HHS*, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. *Villarreal*, 818 F.2d at 463 and 464.

Plaintiff contends that the ALJ ignored Social Security Ruling 96-7p, which says that the ALJ may not disregard the claimant's subjective statements concerning his ability to work "solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186 at *1. As explained in *Saddler v. Commissioner of Social Sec.* 1999 WL 137621, 2 -3 (6th Cir,1999), the ALJ may not "make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." The court noted that according to the ruling, a strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." Where the ALJ explained the reasons for the determination, discussing the specific content of the medical evidence as well as Ms. Saddler's own testimony and his explanation is supported by the evidence, and "we may not second-guess him." (Citations omitted). Id. As found in *Jones v. Commissioner*, 336 F3d 469, 476 (6th Cir 2003), the "ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of the claimant when making a determination of disability."

Here, plaintiff's condition includes a diagnosis of degenerative disc disease as early as 2001. Objective tests showed problems at L4-L5 and at L5-S1. His thoracic spine also showed severe degenerative disc disease but without canal stenosis. Dr. Pierce's treatment included recommendations for physical therapy, medication, and conservative treatment. Plaintiff had steroidal injections in 2004. Plaintiff did not attend physical therapy until after December, 2005 and at that time reported improvement in his pain. Despite the objective findings, Dr. Pierce did not impose any work restrictions or limitations on plaintiff, despite treating him for several years prior to the time his insured status expired. The ALJ reviewed the medical evidence and concluded that it was inconsistent with plaintiff's testimony. While fuller discussion would have been helpful to the court, the medical evidence is consistent with a determination that plaintiff could not perform his past relevant work, but could perform the other jobs identified by the vocational expert through the end of December 2005. Thus, the decision should be affirmed.

**Conclusion**

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying disability benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will

not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

>  s/Virginia M. Morgan
>  Virginia M. Morgan
>  United States Magistrate Judge

Dated: June 23, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 23, 2010.

>  s/Jane Johnson
>  Case Manager to
>  Magistrate Judge Virginia M. Morgan