UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID RUNK,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case number 09-12893
Honorable Julian Abele Cook, Jr.
Magistrate Virginia Morgan

ORDER

The Plaintiff, David Runk, challenges a final decision by the Defendant, the Commissioner of Social Security, who rejected his application for social security disability insurance benefits. Relying upon the provisions of Rule 56 of the Federal Rules of Civil Procedure, both Runk and the Commissioner have filed cross-motions for summary judgment. Each party claims that there are no genuine issues of material fact to be resolved by the Court.

The Court referred these motions to Magistrate Virginia Morgan for consideration, and on June 23, 2010, she issued a report which recommended that the Court (1) grant the Commissioner's motion for summary judgment, (2) deny Runk's motion, and (3) affirm the decision denying disability benefits. On July 7, 2010, Runk filed a timely objection to the report.

I

Runk, who is now in his early fifties, is a high school graduate who completed one year of college and worked in the past as an optician from 1993 through October 30, 2005. Runk stopped working because of severe hip and back pain, in addition to pain and limitations he experienced in bending his hands.

1

Runk contends that he suffers from degenerative disc disease, lumbar spine impairment, hypertension, acid reflux disease, and arthritis in the hands, wrists and right hip. He notes that he has had problems with his hands in the past and became unable to use the small tools necessary to perform his job as an optician. Believing that these conditions rendered him disabled and unable to work, Runk filed an application for social security disability insurance benefits income on April 3, 2006 with the Social Security Administration (SSA). According to Runk's earning records, he had acquired sufficient quarters of coverage to remain insured through December 31, 2005.[1] Accordingly, it was Runk's burden to establish that he suffered from a disability on or before that date in order to be entitled to a continued period of disability and disability insurance benefits. To that end, Runk alleged that he became disabled beginning October 30, 2005. Nevertheless, the SSA denied Runk's claim on June 26, 2006. At a hearing before an administrative law judge (ALJ) held on October 1, 2008, Runk challenged the SSA's decision.

On January 29, 2009, the ALJ denied Runk's claim based on a finding that although he was unable to perform his past relevant work, he still retained the residual functional capacity to perform certain unskilled, low stress light work with postural restrictions. The ALJ thus found that Runk was not disabled within the meaning of the Social Security Act. After Runk requested a review of this decision, the SSA's Appeals Council denied his request for review on May 27, 2009, which led Runk to commence this lawsuit.

In its decision, the ALJ concluded that Runk last met the insured status requirements of the Social Security Act on December 31, 2005 and had not engaged in any substantial gainful activity

---

[1] The Plaintiff is not seeking supplemental security income (SSI) for disability after his insured status expired.

between the alleged onset date of his disability and December 31, 2005. The ALJ also determined that (1) Runk's ability to perform basic work related activities was "more than minimal[ly] limit[ed]" by several severe impairments, including osteoarthritis, degenerative disc and joint disease, hypertension and acid reflux and (2) treatment records from 2007 and 2008 for Runk's alleged major depression were not relevant to an evaluation of his disability status in late 2005. Ultimately, it was the ALJ's decision that Runk is able to perform a significant number of low stress jobs that met the requirements of unskilled, light work that did not require climbing ladders and/or scaffolding, and demanded only occasional (a) climbing of ramps or stairs, (b) stooping, or (c) crouching and crawling.

II

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When evaluating disability insurance benefit claims, Social Security regulations provide for a five-step inquiry. *See* 20 C.F.R. § 404.1520. The Sixth Circuit Court of Appeals has explained this evaluation process as follows:

> The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

3

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (internal citations omitted).

The final decision of the Commissioner regarding a disability determination is reviewed by a district court to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is considered to be more than a scintilla but less than a preponderance. *Richardson v. Perales,* 402 U.S.C. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Supreme Court, in *Richardson*, stated: "it means such reasonable evidence as a reasonable mind might accept as adequate to support a conclusion." 402 U.S. at 401; *See also, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir. 1981). Accordingly, "findings based on the credibility of the applicant are to be accorded great weight and deference," and should not be disturbed. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Additionally, the court must evaluate the administrative record as a whole. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

III

As the magistrate judge noted, a significant portion of the medical evidence relates to treatment Runk received after the date his insurance status had expired. In his first objection, Runk contends that the ALJ erred by failing to properly evaluate the medical opinion evidence of his treating physicians, namely Dr. Khalil, Dr. Jerry and the Physician's Health Network. It is Runk's belief that the ALJ improperly rejected Dr. Khalil's opinion in particular, based almost exclusively on the fact that Dr. Khalil did not treat the Plaintiff until January of 2007, well after the date the he was last insured. Furthermore, Runk alleges that the ALJ failed to consider evidence in existence before 2005 which substantiated Dr. Khalil's later assessments. However, the Court finds the ALJ's findings to be supported by substantial evidence. As the magistrate concluded, none of these

4

doctors saw, examined or treated Runk during the time he was insured. The opinions of Dr. Khalil and Runk's other treating physicians may well have supported a finding that, at the time of the ALJ's decision, Runk was currently experiencing a disability. But, their diagnoses and treatment notes did not support work related limitations before the expiration of Runk's insured status in December of 2005. It was thus reasonable for the ALJ to find, and for the magistrate to confirm, that Dr. Khalil's records were only minimally probative of the Plaintiff's status during the relevant time period, because Dr. Khalil first treated the Plaintiff more than a year after his insured status had expired. This aspect of the Plaintiff's objections to the magistrate judge's report and recommendation must therefore be rejected.

The Plaintiff further protests that the ALJ did not properly evaluate his credibility, devoting scant attention to the Plaintiff's statements in its written order. Specifically, the ALJ noted that Runk's statements concerning the intensity, persistence and limiting effects of his medical symptoms "are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Transcript of the Record at 16). While the ALJ's analysis could have been more complete, the Court finds any error stemming from this omission to be harmless, inasmuch as there was substantial medical evidence to support the finding that Runk was not disabled. Specifically, as the magistrate judge noted, Dr. Pierce treated Runk's degenerative disc disease in 2004 with steroid injections and later referred him for physical therapy. Runk began to report improvements in his experience of pain, and, notably, following this relatively conservative treatment, Dr. Pierce did not place Runk on work restrictions or impose similar limitations at any time during the relevant insured period. The Court accordingly finds that there is substantial evidence to support the determination by the ALJ and the magistrate judge that Runk could not

perform any of his past relevant work, but could participate in other jobs identified by the vocational expert through the end of 2005. Accordingly, this aspect of Runk's objection to the magistrate judge's report and recommendation is also rejected.

Finally, the Plaintiff complains that the ALJ undervalued the severity of his alleged mental impairments. Yet, as the magistrate judge noted, a Plaintiff suffering from such a condition must demonstrate that the mental impairment was sufficiently severe to render him disabled as contemplated by the Social Security Act. *See e.g,, Gerst v. Secretary of Health and Human Services*, 709 F.2d 1075 (6th Cir. 1983). Here, however, as noted by the ALJ and the magistrate judge, the treatment notes provided by Dr. Pierce during the relevant time frame do not rise to the level of a clinical diagnosis or finding of any mental impairment that would classify Runk as being disabled. To the contrary, the notes reflect such speculative remarks as the fact that "David has a history of anxiety, probably depression," and that his mother has a history of mental illness, specifically bi-polar disorder. Beyond that, however, the medical evidence does not indicate whether Runk was depressed or mentally ill before December 31, 2005, and it shows no history of inpatient or outpatient mental health treatment before that time frame. By contrast, the record reflects that he stopped working not because of mental health concerns, but because of physical ailments with his back, hand and leg. Simply put, there is not sufficient evidence in the record to support a finding that the Plaintiff suffered from a severe mental impairment.

IV.

After reviewing the official record in this case, the Court is satisfied that the magistrate

6

judge's decision to uphold the ALJ's conclusion – that Runk was not disabled – is supported by substantial evidence.  Accordingly, the Court adopts the recommendation of the magistrate judge, and therefore (1) grants the Commissioner's motion for summary judgment, (2) denies Runk's request for a summary judgment, and (3) affirms the decision denying benefits.

    IT IS SO ORDERED.


Dated: <u>September 30, 2010</u>                      <u>s/Julian Abele Cook, Jr.</u>
      Detroit, Michigan                 JULIAN ABELE COOK, JR.
                                              United States District Court Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 30, 2010.

                                                          <u>s/ Kay Doaks</u>
                                                          Case Manager